# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 1:07-cv-01776 (EGS) |
| | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

_____)

### MOTION FOR AN OPEN AMERICA STAY OF PROCEEDINGS PENDING COMPLETION OF THE SEARCH AND PRODUCTION OF DOCUMENTS

Defendant United States Food and Drug Administration ("FDA") hereby moves for a stay of proceedings, pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). The grounds for defendant's motion are set forth in the memorandum and supporting declaration submitted herewith.

Pursuant to Local Rule 7(m), the undersigned counsel contacted plaintiff's counsel, who stated that Plaintiff opposes this motion.

A proposed order is also attached.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

Of Counsel:

JAMES C. STANSEL
Acting General Counsel

GERALD F. MASOUDI
Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

CLAUDIA J. ZUCKERMAN
Associate Chief Counsel for Enforcement
U.S. Dept. of Health & Human Services
Office of the General Counsel
5600 Fishers Lane, GCF-1
Rockville, MD  20857
301-827-3676

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-01776 (EGS) |
| | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**FOR A STAY OF PROCEEDINGS PENDING COMPLETION**
**OF THE SEARCH AND PRODUCTION OF DOCUMENTS**

**I.     INTRODUCTION**

Plaintiff has submitted a request for documents to the Food and Drug Administration (FDA or agency) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking certain documents relating to vaccines for human papillomavirus (HPV), which causes cervical cancer.[1] Pl.'s Cmplt. ¶ 5.  Although FDA is exercising due diligence in responding to Plaintiff's FOIA request, the agency has not been able to process the request within the statutory time limit.  The demands of court-ordered document production and other information disclosure obligations, coupled with the agency's backlog of FOIA requests, constitute exceptional circumstances that make a stay of proceedings appropriate under Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  Pursuant to 5 U.S.C. § 552(a)(6)(C), which provides for additional time under such circumstances, Defendant requests the Court to stay the proceedings until FDA is able to finish processing Plaintiff's request.

_____

[1]  Gardasil®, manufactured by Merck and Co., Inc., is the only FDA-approved vaccine for use in the prevention of cervical cancer caused by HPV.

In support of its motion, FDA has provided declarations from Frederick J. Sadler, Director of the Division of Freedom of Information (DFOI), Office of Management Programs, Office of the Commissioner (Sadler Decl.) and Joanne Binkley, Deputy Director of the Office of Communication, Training and Manufacturers Assistance, Center for Biologics Evaluation and Research (CBER) (Binkley Decl.).[2] These declarations explain that FDA anticipates the need for a stay of at least thirty-eight (38) months to process Plaintiff's FOIA request.

## II.    BACKGROUND

### A.    Plaintiff's FOIA Request

By letter dated May 9, 2007, Plaintiff submitted a FOIA request to FDA. Plaintiff's FOIA request included five itemized requests for agency records, from January 2004 to the present, concerning the following items:

1.    Correspondence between Merck and the FDA regarding the vaccine Gardasil.

2.    Correspondence between GlaxoSmithKline (GSK) and the FDA regarding approval for the vaccine Cervarix.

3.    Correspondence regarding any new drug application seeking approval for the prevention of human papillomavirus (HPV) and/or cervical cancer.

4.    Reports to the FDA by consumers, health professionals and FDA regulated companies made to the Vaccine Adverse Event Reporting System regarding problems with the HPV vaccine.[3]

---

[2] The Sadler and Binkley declarations are at Tabs A and B, respectively. Also submitted with this motion is a declaration from Claudia J. Zuckerman, Associate Chief Counsel for Enforcement, FDA (Zuckerman Decl.), at Tab C.

[3] In Plaintiff's FOIA request, "HPV vaccine" refers to Gardasil. Sadler Decl. Ex. 1, at 6.

> 5.    Third party communications encouraging the approval of any or all vaccines for HPV.

Pl's. Cmplt. ¶ 5; Sadler Decl. ¶ 9 and Ex. 1 thereto.  DFOI logged in Plaintiff's request and assigned it reference number 2007-4707, reflecting that it was the 4,707[th] FOIA request received by FDA during calendar year 2007.[4]  Sadler Decl. ¶ 10.

By letter dated May 10, 2007, FDA notified Plaintiff that the agency would respond to its request as soon as possible.  Sadler Decl. ¶ 11 and Ex. 2 thereto.  The letter also invited Plaintiff to contact FDA at a telephone number and address provided if Plaintiff had any questions related to the FOIA  request.  Id.

FDA receives numerous requests for documents under FOIA and generates a vast number of documents in the course of agency business.[5]  To streamline the agency's response to FOIA requests, DFOI forwards each incoming request to the part(s) of the agency that it determines are reasonably likely to possess responsive records.  Sadler Decl. ¶ 7.  In this case, DFOI forwarded Plaintiff's request to the office that processes FOIA requests for CBER – the Access Litigation and Freedom of Information Branch (ALFOI), in CBER's Division of Disclosure and Oversight Management (DDOM) –  because the request sought records relating to products regulated by CBER.  Id. ¶ 12.

DDOM's ALFOI received Plaintiff's request from DFOI on May 10, 2007, and placed it in two queues – the Adverse Event Track (item four of the FOIA request - reports to the FDA's Vaccine Adverse Event Reporting System regarding problems with the HPV vaccine) and the

---

[4]  FDA received approximately 11,400 FOIA requests in 2007.  Sadler Decl. ¶ 4.

[5]  FDA monitors the manufacture, distribution, import, transport, storage, marketing, and sale of $1 trillion worth of goods annually.  The agency employs over 9,000 people nationwide.

Complex Track (all remaining items requested - one, two, three, and five of the FOIA request). Binkley Decl. ¶ 29. On May 14, 2007, ALFOI provided a partial response to request item four by forwarding to Plaintiff a CD-Rom with a line-listing of adverse events associated with Gardasil. Id. ¶ 29.A.

DFOI also forwarded Plaintiff's FOIA request to other components of FDA – the Center for Drug Evaluation and Research, the Office of Chief Counsel, the Office of Regulatory Affairs, the Division of Dockets Management, the Office of Legislation, the Office of Executive Secretariat, the Immediate Office of the Commissioner, and the Office of Public Affairs – because of the likelihood that these components might also have documents potentially responsive to Plaintiff's FOIA request. Sadler Decl. ¶ 13. Several of these components have conducted searches and responded to Plaintiff's request. Id. ¶ 14.

On October 3, 2007, Plaintiff filed its Complaint to compel the records sought in its FOIA request. On December 20, 2007, Defendant filed an Answer which, among other things, advised Plaintiff that the government intended to seek a stay of proceedings in this matter, pursuant to 5 U.S.C. § 552(a)(6)(C).

On February 6, 2008, Defendant's counsel spoke with counsel for Plaintiff concerning its FOIA action. Zuckerman Decl. ¶ 2. During that conversation, Defendant's counsel stated that Plaintiff's FOIA request, specifically item number four, needed clarification as to whether the request had intended to seek the actual adverse event reports in addition to the line listing of adverse events already provided. Id. ¶ 3. Plaintiff's counsel stated that he needed to speak with his client and would get back to counsel for Defendant, which as of February 27, 2008, has not occurred. Id. ¶¶ 3, 5. Defendant's counsel also advised that, in light of the number of FOIA

4

requests currently pending in line ahead of Plaintiff's request, it could take roughly thirty-six months, perhaps more, for CBER to finish processing Plaintiff's FOIA request.  Id. ¶ 4.

## B.    **Factual Basis for an Open America Stay**

### 1.    **ALFOI's Document Production Process**

ALFOI has a staff of seven full-time employees – one branch chief, five full-time consumer safety officers, and one paralegal specialist – to handle the day-to-day work involved in ALFOI's document disclosure duties.  Binkley Decl. ¶ 4.  ALFOI is responsible for redacting CBER-maintained documents for disclosure in response to:  (a) FOIA requests; (b) litigation-related document requests; (c) web-posting obligations in the Electronic Freedom of Information Act Amendments of 1996 (EFOIA); and (d) web-posting obligations in the Federal Advisory Committee Act (FACA).  Id. ¶ 3.  Litigation-related document production covers responses to discovery requests, third-party subpoenas, and court orders to fulfill FOIA requests.  Id.

After receiving a FOIA request from DFOI (FDA's main FOIA office), ALFOI assigns the FOIA request to one (or more) of seven queues of pending requests, based on the complexity and subject matter of the requested documents.  Binkley Decl. ¶ 7.  The Complex Track, where most of Plaintiff's FOIA request is currently pending, includes all requests that do not meet the criteria for any of the other six queues and often involve voluminous records and require extensive time to locate, review, and/or redact the records.  Id. ¶ 8.  Requests in each queue generally are assigned to reviewers for processing on a first-in, first-out basis.  Id. ¶¶ 7, 11-12.

When ALFOI assigns a FOIA request to a reviewer for processing, the reviewer must search for and collect potentially responsive documents from various central file locations.  Binkley Decl. ¶ 10.  A reviewer may also need to contact CBER personnel and direct them to

5

search their individual files – a process that may necessitate extensive searches for documents in files kept by employees working within the numerous divisions in CBER.  Id.  After the reviewer collects potentially responsive documents, (s)he conducts an initial review to verify that the documents are responsive.  Id.  Documents available only in hard-copy are scanned into electronic files.  Id.  Next, the reviewer conducts a line-by-line, word-by-word review of the responsive documents to determine which, if any, FOIA exemptions apply, and then electronically redacts the material.  Id.  The reviewer consults with the branch chief, division director, and FDA's Office of Chief Counsel when necessary to resolve questions on complex disclosure matters.  Id.  Then, the reviewer conducts a quality control check to ensure that the responsive documents have been properly prepared for disclosure and makes copies of the responsive documents for delivery to the requester.  Id.

When ALFOI produces documents in response to discovery requests, third-party subpoenas, and court orders to fulfill FOIA requests, reviewers perform all of the tasks previously mentioned, as well as additional steps, such as bates-stamping, creating a Vaughn index or privilege log, and conducting a quality control check of the index/log to assure its accuracy and completeness.  Binkley Decl. ¶ 13.  These additional steps can increase the processing time considerably.  Id.  Frequently, ALFOI must shift resources away from processing FOIA requests pending in the queues to meet the court-ordered deadlines in litigation-related document production.  Id.

To comply with the statutory requirements for document disclosure pursuant to EFOIA and FACA, ALFOI reviews and redacts for posting on FDA's website:  (a) documents that have been anticipated to be frequently requested, such as product approval letters, summary reviews

6

for approved products, and warning letters; and (b) briefing materials for advisory committee members.  Binkley Decl. ¶ 14.  Although the web-posting activities ultimately reduce the number of incoming FOIA requests each year, they nevertheless require considerable up-front processing effort because ALFOI must expend the same resources to review and redact the documents as it would if it were responding to FOIA requests for the same information.  Id. ¶¶ 14, 24.

    2.  ALFOI's Workload

ALFOI's current workload includes approximately 438 FOIA requests (as of January 31, 2008) that are waiting to be processed (i.e., they are part of ALFOI's FOIA request backlog). Binkley Decl. ¶ 15.  Roughly 100 of the requests in the Complex Track have been in line longer than Plaintiff's request and, based on ALFOI's first-in, first-out processing system, those 100 requests will be processed ahead of Plaintiff's request.  Id. ¶ 19, 21.  If ALFOI were to assign one full-time reviewer to process requests in the Complex Track, it could take roughly five years before Plaintiff's FOIA request reached the front of the queue for processing.  Id. ¶ 21.  Although the Complex Track is managed by more than one reviewer, reviewers generally do not work full-time on requests pending in that queue.  Id.

ALFOI also devotes its resources to processing document requests under court-ordered deadlines – in response to discovery, third-party subpoenas, and FOIA requests in litigation. Binkley Decl. ¶ 22.  ALFOI has had to assign from one to four reviewers, who would otherwise have been processing FOIA requests pending in the backlog, to litigation-related document

production to meet deadlines.  Id. ¶ 23 (discussing seven litigation matters for which ALFOI processed documents between 2005 and 2007).[6]

Currently, ALFOI is working, in conjunction with staff in DDOM's other branch, on document production in Olmstead v. Department of Defense, No. 05-0018 (D.D.C.), a FOIA lawsuit.  Binkley Decl. ¶ 15.  Document production for this case involves reviewing for responsiveness over 20,000 pages of documents, redacting roughly 5,000 responsive pages, and preparing a Vaughn index.  Id.  DDOM anticipates that at least two employees will need to continue working nearly full-time on this FOIA request to meet the court-imposed deadline.  Id.

The resource demands of document requests are affected by factors such as:  (a) the difficulty in searching for and locating potentially responsive documents (some requests involve numerous files maintained by individual employees or may ask for documents generated fifty or more years ago); (b) the sheer number of potentially responsive documents (which then require sorting to eliminate non-responsive or duplicative documents); (c) the complexity of information contained in the responsive documents, including protected or privileged information, which needs to be redacted; and (d) the amount of time needed to resolve novel disclosure issues raised by a request.  Binkley Decl. ¶ 17.

Historically, the time to process FOIA requests pending in ALFOI's Complex Track has been highly variable.  Binkley Decl. ¶ 21.  For example, processing times for the previous thirty requests from the Complex Track ranged between eight and 406 hours.  Id.  A subset of those

---

[6]  In 2005 and part of 2006, ALFOI had seven full-time employees; for the remainder of 2006 and most of 2007, ALFOI had six full-time employees.  See Binkley Decl. ¶¶ 4, 27.C. and footnotes 1, 11.  In November 2007, another full-time employee began working in ALFOI, bringing the staff back up to seven employees.  Id.

8

thirty requests – the ten "newest" requests – each took, on average, 156 hours to process.  Id.; see also id. ¶ 18 (discussing two recently completed FOIA requests requiring extensive resources to identify responsive documents or to redact privileged and protected information from responsive documents).

Because of ALFOI's small staff (currently seven employees), one highly resource-intensive request can have a major impact on ALFOI's ability to process FOIA requests in a timely manner.  Binkley Decl. ¶ 19.  For example, one of the requests in the Complex Track to be processed before Plaintiff's request has the potential, unless narrowed, to require one full-time employee about two years to process.  Id.

In addition to its responsibilities to process FOIA requests and to conduct court-ordered document production, ALFOI must review and redact documents to comply with disclosure requirements in EFOIA and FACA.  Binkley Decl. ¶¶ 14, 24.  As a result of the Food and Drug Administration Amendments Act of 2007, signed into law in September 2007, ALFOI's responsibilities related to reviewing and redacting documents for posting on FDA's website have dramatically increased.  Id. ¶ 25.

### 3.  Responsive Action to the Backlog of FOIA Requests

In the past three years, ALFOI reduced its FOIA request backlog by about thirty-four percent – from an estimated 659 requests pending at the end of 2004 to an estimated 432 requests pending at the end of 2007.   Binkley Decl. ¶ 26.   During that time frame, ALFOI closed 227 more requests than it received.[7]  Id.

---

[7]   In 2006 and 2007, ALFOI received about the same number of FOIA requests – 343 requests in 2006 and 345 requests in 2007.  Binkley Decl. ¶ 16.  In 2005, the number of requests received by ALFOI was slightly higher – 363 requests.  Id.  Between 2005 and 2007, ALFOI

DDOM implemented several measures to reduce the FOIA request backlog, such as hiring additional personnel and improving processing time through the use of new information technology systems. Binkley Decl. ¶ 27. For example, DDOM increased the number of employees processing FOIA requests by creating two additional FOIA queues, one in April 2003 and the other in July 2006, to be managed for the most part by individuals outside of ALFOI (in DDOM's other branch). Id. ¶ 27.A. In addition, when funds were available, DDOM retained individuals on contract to assist with lengthy court-ordered document production, which enabled ALFOI staff to devote more time to clearing the backlog of FOIA requests. Id. ¶ 27.B. To address the very oldest pending FOIA requests, DDOM requested and received assistance for a six-week period between November and December 2007 from two employees outside of the division. Id. ¶ 27.D. DDOM requested and received funds to increase ALFOI's staff in 2008 with two full-time employees – a nearly thirty percent increase in the number of personnel working in ALFOI. Id. ¶ 27.C.

Also, as part of its efforts to reduce the FOIA request backlog, ALFOI increased its electronic access to and electronic processing of documents. Since 2002, ALFOI has been using software to redact documents electronically. Binkley Decl. ¶ 27.E. In 2003, CBER created an electronic document room, which gives ALFOI access to an electronic archive of a number of regulatory documents.[8] Id. In January 2006, FDA implemented an agency-wide database to track FOIA requests, which has helped to streamline various administrative aspects of processing

---

closed 363 requests (2005), 487 requests (2006) , and 428 requests (2007). Id.

[8] The number of documents currently in the electronic archive, however, is limited. See Binkley Decl. ¶ 27.E. (discussing the electronic archive's reliance on industry to file its regulatory submissions electronically).

10

requests.  Id.  In November 2007, ALFOI began creating searchable electronic files of documents

produced in response to FOIA requests so that, when the same information is requested by

another FOIA requester, searching for and producing documents will not involve hand-sifting

through paper files.  Id. ¶ 28.

## III.   ARGUMENT

### A.   The Open America Standard for a Stay of Proceedings

When an agency receives a FOIA request, it generally must determine within twenty

working days whether to comply with the request.  5 U.S.C. § 552(a)(6)(A)(i).  Courts, however,

may provide the agency with additional time (i.e., a stay of proceedings) to process a request on a

showing that "exceptional circumstances exist" and "the agency is exercising due diligence in

responding to the request."  5 U.S.C. § 552(a)(6)(C)(i).  The provision for a stay was "designed

and inserted specifically as a safety valve for [FOIA]."  Open America, 547 F.2d at 610.

Exceptional circumstances exist when an agency "is deluged with a volume of requests

for information vastly in excess of that anticipated by Congress" and "the existing resources are

inadequate to deal with the volume of such requests within the time limits of subsection (6)(A)."

Open America, 547 F.2d at 616; Edmonds v. Fed. Bureau of Investigation, 417 F.3d 1319, 1321

n.2 (D.C. Cir. 2005).  When an agency is "making good-faith efforts and exercising due diligence

in processing requests and appeals on a first-in, first-out basis, courts generally find that

exceptional circumstances excuse any delays."  Center for Biological Diversity v. Gutierrez, 451

F. Supp. 2d 57, 70 (D.D.C. 2006); Appleton v. Food and Drug Admin., 254 F. Supp. 2d 6, 8-9

(D.D.C. 2003).  Even when delays result from a predictable agency workload of requests,

exceptional circumstances can exist if the agency can demonstrate "'reasonable progress in

reducing its backlog of pending requests.'" <u>Leadership Conference on Civil Rights v. Gonzales</u>, 404 F. Supp. 2d 246, 259 (D.D.C. 2005) (quoting 5 U.S.C. § 552(a)(6)(C)(ii)); <u>Appleton</u>, 254 F. Supp. 2d at 9.

In analyzing whether an agency faces exceptional circumstances, courts may consider, among other things, the size and complexity of FOIA requests received by the agency, as well as the agency's other information access obligations, such as the number of court-ordered document requests. <u>See</u>, <u>e.g.</u>, <u>Electronic Frontier Found. v. Dep't of Justice</u>, 517 F. Supp. 2d 111, 117 (D.D.C. 2007) (citing H.R. Rep. 104-795 at 24 (1996) <u>reprinted in</u> 1996 U.S.C.C.A.N. 3448, 3467).[9] Also relevant is the agency's budget allocated by Congress. <u>Center for Biological Diversity</u>, 451 F. Supp. 2d at 70.

Courts in this District have found exceptional circumstances to exist in cases where an agency experienced, for example: (1) an increase in FOIA requests in tandem with unprecedented personnel shortages;[10] (2) a modest annual increase in FOIA requests along with an unforeseen increase in other document disclosure obligations;[11] or (3) an unanticipated backlog of FOIA requests that arose because of the competing demands of administrative appeals, litigation responsibilities, and national security priorities.[12] However, a finding that

---

[9] <u>See also</u> <u>Edmonds v. Fed. Bureau of Investigation</u>, No. 02-1294, 2002 WL 32539613, *2 (D.D.C. Dec. 3, 2002) (FOIA staff's time spent on "administrative appeals, litigation and large projects" contributed to finding of exceptional circumstances).

[10] <u>Electronic Frontier Found.</u>, 517 F. Supp. 2d at 119.

[11] <u>Center for Public Integrity v. United States Dep't of State</u>, No. 05-2313, 2006 WL 1073066, *5 (D.D.C. Apr. 24, 2006).

[12] <u>Electronic Privacy Info. Ctr. v. United States Dep't of Justice</u>, No. 02-0063, 2005 U.S. Dist. LEXIS 18876, *12-15 (D.D.C. Aug. 31, 2005).

some part of the agency's workload was unexpected, unforeseen, or related to an unprecedented event, is not a prerequisite for meeting the unexpected circumstances requirement of the <u>Open America</u> standard.[13]  For example, in <u>Appleton</u>, the court concluded that FDA was entitled to an <u>Open America</u> stay because the agency demonstrated "good-faith efforts and due diligence in processing the plaintiff's request on a first-in, first-out basis" and showed "reasonable progress in reducing its [FOIA request] backlog."  254 F. Supp. 2d at 10; <u>Cf.</u> <u>Center for Biological Diversity</u>, 451 F. Supp. 2d at 70 (holding that,"[d]ue to the increased volume of FOIA requests received by [the agency] and the agency's good-faith efforts in completing such requests, [the agency] meets the <u>Open America</u> exceptional circumstance standard . . .").

Therefore, under the <u>Open America</u> standard, if an agency's workload is predictable, the agency must demonstrate that it has made reasonable progress on its FOIA request backlog.  The "reasonable progress" requirement is a flexible concept whose meaning is relative to the agency's particular situation.  Factors that contribute to an agency's showing of reasonable progress include seeking additional funding for new hires, modernizing practices for processing FOIA requests, and purchasing equipment and implementing initiatives tied directly to backlog reduction.[14]  <u>Electronic Frontier Found.</u>, 517 F. Supp. 2d at 115, 118, 119 (finding a significant backlog reduction, associated with the agency's request for funding for new positions, transfer to a paperless process, and use of upgraded systems for record maintenance).

---

[13]  <u>Cf.</u> <u>Center for Public Integrity</u>, 2006 WL 1073066 at *4 (noting that the requirement to demonstrate reasonable progress is applicable in "cases where an agency claims exceptional circumstances based on '<u>predictable</u> agency workload'").

[14]  Reasonable progress can exist even in cases where the number of pending FOIA requests increased during one of the years within the time frame being assessed.  <u>Appleton</u>, 254 F. Supp. 2d at 10 n.4.

The due diligence requirement for an Open America stay is generally met by processing FOIA requests within their respective queues on a first-in, first-out policy.  See, e.g., Appleton, 254 F. Supp. 2d at 9-10; Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997).

Thus, when an agency can show:  (1) (a) a deluge of requests in excess of the volume anticipated by Congress, (b) inadequate resources to manage the deluge, and (c) reasonable progress on the FOIA request backlog, if the workload is predictable; and (2) good faith and due diligence in complying with requests by processing them on a first-in, first-out basis, the agency may receive a stay of proceedings.  As detailed below and in the accompanying declarations, FDA has met those factors here.  Accordingly, a stay of proceedings is appropriate.

### B.    FDA is Entitled to a Stay under the Open America Standard

1. FDA is Facing Exceptional Circumstances from Substantial Information Access Demands and a FOIA Request Backlog that, despite having been Significantly Reduced, Prevented ALFOI from Responding to Plaintiff's FOIA Request within a Twenty-Day Deadline

a. ALFOI's Workload is Overwhelming

The declaration of Joanne Binkley, Deputy Director of the Office of Communication, Training and Manufacturers Assistance, provides a detailed discussion of the responsibilities of ALFOI's small staff.  The workload comprising ALFOI's responsibilities is burdensome and unrelenting.  Furthermore, the workload can be unpredictable, particularly in light of the number of employee positions that exist to meet ALFOI's obligations.

ALFOI receives numerous FOIA requests each year (about 345 requests), which adds to its backlog of pending requests (currently about 438 requests).  Binkley Decl. ¶¶ 15-16.  Some of the FOIA requests are exceedingly time-consuming because of the broad searches that must be

14

conducted to identify responsive documents, the volume of potentially responsive documents that must be sorted and culled, and the number of responsive documents that must be redacted prior to disclosure because they contain privileged or protected information.[15]  Id. ¶¶ 10 and n.2, 17-18. Preparing documents for public disclosure is a complex and demanding task; the FOIA requests received by ALFOI can require months, sometimes longer, to process.  Id. ¶¶ 18-19, 21.

Moreover, ALFOI has little control over the expansiveness of the FOIA requests submitted to the agency.  See Binkley Decl. ¶ 20.  There is no statutory obligation for a requester to minimize the impact its request may have on the agency's available resources for processing FOIA requests.  A requester may seek a virtually unlimited number of documents, without having to consider whether its FOIA request requires a disproportionate use of ALFOI's resources for processing or exponentially increases the time that subsequent FOIA requests must wait to reach the front of the line to be processed.  See id.

ALFOI is also subject to unusually heavy ligation demands.  Litigation-related document production (responding to discovery requests, third-party subpoenas, or FOIA requests in litigation) is resource-intensive and greatly increases the document processing time relative to

---

[15]  The majority of documents that are responsive to FOIA requests received by CBER include information that is exempt from disclosure (for example, trade secret information, confidential commercial information, personal privacy and/or deliberative process information). The Federal Food, Drug, and Cosmetic Act (FDCA) prohibits the release of trade secret information to persons other than Department of Health and Human Services employees, to Congress, or to the courts where relevant in cases brought under the FDCA.  21 U.S.C. § 331(j). The Trade Secrets Act prohibits the release of trade secret information unless otherwise authorized by law.  18 U.S.C. § 1905.  In addition, FDA regulations provide that:  (a) trade secret and privileged or confidential commercial information is unavailable for public disclosure; (b) intra-agency pre-decisional information that is part of an agency's decision-making process is privileged and exempt from disclosure; and (c) identifying information in medical or similar files, which, if disclosed, would be an unwarranted invasion of personal privacy, is unavailable for public disclosure.  21 C.F.R. §§ 20.61, 20.62, 20.63, respectively.

15

preparing the same information for disclosure in response to a (non-litigated) FOIA request.  See
Binkley Decl. ¶ 13 (discussing additional steps associated with litigation-related document
production).

Because the litigation-related document production is performed under court order,
ALFOI's staff has little or no flexibility to work on pending FOIA requests.  Binkley Decl. ¶ 22.
In fact, ALFOI must shift resources away from processing pending requests to meet strict
timetables often present in litigation.  Id.  In this way, ALFOI's obligations arising from court-
ordered productions contribute to delays in processing FOIA requests.

Furthermore, court-ordered document production adds an element of unpredictability to
ALFOI's workload.  The timing of litigation, coupled with the case-specific burden of gathering,
reviewing, and redacting documents by the court-imposed deadline, are unforeseeable.  Thus,
ALFOI cannot avoid re-directing its resources to meet the deadlines, which inevitably slows
progress on pending FOIA requests.  Cf. Binkley Decl. ¶ 22.

ALFOI had to assign several staff members to manage document production to meet
court-ordered deadlines during most of 2005-2007, in response to the following:

(a) a third-party subpoena in Selden v. FDA, No. 05-0476 (D.D.C.), which
required the equivalent of one full-time employee for over eight months (between fall 2006
through summer 2007), along with a considerable amount of supervisory time at the branch and
division levels;

(b) a third-party subpoena in  Securities and Exchange Commission v. Biopure
Corp., No. 05-0506 (D.D.C.), which required over 780 hours of staff time or the approximate
equivalent of one full-time employee for six months (in the second half of 2006);

(c) discovery requests in <u>Gannon v. United States</u>, No. 03-6626 (E.D. Pa.), which required two full-time employees (one from ALFOI, one from DDOM's other branch) for approximately nine months (during parts of 2005 and 2006), and assistance from other employees from each branch for several months;

(d) discovery in <u>In re: Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder v. Secretary of HHS</u>, (Fed. Cl. Spec. Master, July 3, 2002), which required about six full-time employees (two from ALFOI, one from DDOM's other branch, and three contract attorneys) for three years, from 2004–2006; and

(e) court-ordered document production in a FOIA lawsuit, <u>Campaign for Responsible Transplantation v. FDA</u>, No. 1:00cv2849 (D.D.C.), which required about one full-time employee for almost one year, in 2005 (with other document productions having been completed prior to 2005).  Binkley Decl. ¶ 23.

As part of its workload, ALFOI also processes documents for posting on FDA's website in compliance with the EFOIA and FACA.  In 2005-2007, ALFOI processed roughly between 2,000 and 2,500 pages per year pursuant to these statutory requirements.  Binkley Decl. ¶ 24.  However, the amendments to the FDCA signed into law in September 2007 require ALFOI to redact, for disclosure on FDA's website, action packages for approval of biologics license applications.[16]

---

[16] An action package includes (a) documents generated by FDA related to its review of the application, (b) documents pertaining to the format and content of the application generated during drug development, (c) a summary review that documents conclusions from all reviewing disciplines about the product, noting critical issues and disagreements and how they were resolved, and (d) other decision documents from the directors of the division and office in which review of the product application occurred.  <u>See</u> Binkley Decl. ¶ 25.

17

This change represents a substantial increase in ALFOI's obligations related to pro-active posting of records on the agency's website.  Id. ¶ 25.

Because of its staggering workload, ALFOI has been unable to keep pace with the information access demands of incoming and currently pending FOIA requests.  To some extent, the unpredictability of its workload burden is a function of its small staff, which in turn is a function of the availability of funds to fill vacancies and to hire additional personnel.  Although the number of employees in ALFOI's staff has increased, its resources remain entirely inadequate to process FOIA requests within the short twenty-day period set by FOIA.

### b.  ALFOI has made Reasonable Progress in Reducing its Backlog

ALFOI has made substantial efforts to reduce its FOIA request backlog and has achieved a significant reduction in the numbers of requests pending in its queues.  Despite the enormous demands on ALFOI, it has succeeded in reducing its backlog by approximately thirty-four percent – from an estimated 659 requests pending at the end of 2004 to an estimated 432 requests pending at the end of 2007.  Binkley Decl. ¶ 26.

DDOM implemented several measures to improve its FOIA request backlog.  For example, DDOM increased the number of employees processing FOIA requests in several ways, including: (a) creating two additional FOIA queues, one in April 2003 and the other in July 2006, generally to be managed by individuals outside of ALFOI; (b) retaining individuals on contract to assist with court-ordered document production; (c) requesting and receiving resources for a six-week period at the end of 2007 specifically to address the oldest then-pending requests; and (d) requesting and receiving funds to add two full-time employees to ALFOI's staff in 2008, which

represents a nearly thirty percent increase in the number of ALFOI's full-time employees.  See Binkley Decl. ¶ 27.

ALFOI has also increased its use of information technology systems by: (a) beginning in 2002, using software to redact documents electronically; (b) using an electronic document room, created by CBER in 2003, to access an electronic archive of regulatory documents submitted electronically to CBER; (c) using the agency-wide FOIA request database, created by DFOI in January 2006, to streamline various administrative aspects of processing requests; and (d) beginning in November 2007, creating a searchable electronic file of documents produced in response to FOIA requests to facilitate production of the same information in response to other FOIA requests.  Binkley Decl. ¶¶ 27-28.

Based on these facts, ALFOI has demonstrated reasonable progress in reducing its FOIA request backlog.[17]  Cf. Electronic Frontier Found., 517 F. Supp. 2d at 115, 118, 119 (finding that the agency's request for funding for new positions, transfer to a paperless process, and use of upgraded systems for record maintenance contributed to a showing of reasonable progress).  ALFOI's considerable improvement in its backlog, along with its demanding workload, support a finding of exceptional circumstances by this Court.

      2.  FDA is Exercising Good Faith and Due Diligence in Responding to FOIA Requests, including Plaintiff's Request

FDA is also exercising due diligence by processing FOIA requests on a first-in, first-out basis.  See Binkley Decl. ¶¶ 7, 11-12; Sadler Decl. ¶¶ 5-7.  In addition, FDA has made good-faith

---

[17]  Cf. Appleton, 254 F. Supp. 2d at 9, 10 (finding that FDA agency-wide had shown reasonable progress in reducing its backlog of FOIA requests from 1998-2001).

efforts and is exercising due diligence in processing Plaintiff's request.  See Binkley Decl. ¶¶ 29-30; Sadler Decl. ¶¶ 10-14.  Plaintiff submitted its FOIA request to DFOI on May 9, 2007; ALFOI received the request from DFOI on May 10, 2007.  Binkley Decl. ¶ 29.  In a letter dated May 14, 2007, ALFOI provided a partial response to Plaintiff – a CD-Rom with a line-listing of adverse events associated with Gardasil.  Id. ¶ 29.A.  With these actions, ALFOI has been responsive to the extent possible, while maintaining a first-in first-out processing system.  Plaintiff's FOIA request has also been forwarded to eight other components in FDA, several of which have conducted searches and responded to Plaintiff.  See Sadler Decl. ¶ 14.

In sum, ALFOI has an overabundant workload and inadequate resources to manage that workload, including responding to FOIA requests, such as Plaintiff's within FOIA's twenty-day time frame.  Nevertheless, ALFOI has made reasonable progress on its FOIA request backlog and has shown good faith and due diligence in processing FOIA requests, including Plaintiff's. Accordingly, under the Open America case law – see, e.g., Center for Biological Diversity, 451 F. Supp. 2d at 70; Appleton, 254 F. Supp. 2d at 8-9;  Edmond, 959 F. Supp. at 3 – a stay of proceedings is appropriate here.[18]

---

[18]  In three recent cases, however, courts outside this Circuit have denied FDA's motions for Open America stays.  See Bloomberg L.P. v. FDA, 500 F. Supp. 2d 371, 379 (S.D.N.Y. 2007); Jerome Stevens Pharmaceuticals, Inc. v. FDA, No. 07-1985, *15 (E.D.N.Y. Jan. 12, 2008); Weinberg v. von Eschenbach, No. 07-1819, *7 (D. N.J. Oct. 10, 2007).  Nevertheless, the government notes that:  (1) each case involved FDA's Center for Drug Evaluation and Research (CDER) – not CBER – and, as a result, presented different facts; (2) in any event, the CDER-specific facts relevant to a stay of proceedings have changed (see Government Accountability Project v. U.S. Dep't of Health and Human Servs. and FDA, No. 07-1702 (D.D.C.) (memorandum in support of defendant's motion for a stay at Dkt. No. 7)); and, (3) in other FDA cases involving CDER, courts have granted Open America stays to FDA.  See Appleton, 254 F. Supp. 2d at 10; The Humane Society of the United States v. FDA, No. 05-1089, *5 (D.D.C. Oct. 24, 2005); cf. Bower v. FDA, No. 03-0224, 2004 WL 2030277, *3 (D. Me. Aug. 30, 2004).

**C.** **This Court Should Stay the Proceedings for a Duration Sufficient to Allow FDA to Finish Processing Plaintiff's FOIA Request**

ALFOI's demanding workload is straining its staff as its responsibilities outpace its funding – a situation that is not unfamiliar to FDA agency-wide.  In this case, FDA seeks a stay of proceedings commensurate with the workload burdens on ALFOI's small staff and consistent with its goal of maintaining its first-in, first-out processing system.  ALFOI's best current estimate of time needed to process Plaintiff's FOIA request is at least thirty-eight months – a minimum of thirty months for Plaintiff's request to reach the front of the Complex Track, a minimum of four months to identify, review, and redact documents, and a minimum of four months to perform litigation-related tasks (i.e., bates-stamping, creating a Vaughn index).[19]  Binkley Decl. ¶ 31.

When agencies have demonstrated the requirements set forth in Open America, courts have granted stays that has resulted in substantial time spans between the submission of the FOIA request and termination of the stay.  See, e.g., Electronic Frontier Found., 517 F. Supp. 2d at 121 (granting a stay until May 9, 2008, with the possibility of extension, on a FOIA request submitted to the FBI twenty-one months prior to that date);[20] Summers v. U.S. Dep't of Justice, 477 F. Supp. 2d 56, 59 (D.D.C. 2007) (noting that the court had granted a stay until March 27, 2000, on a FOIA

---

[19]  Reviewing and redacting the documents sought by Plaintiff will require a significant amount of time because documents from biologics license files normally contain large amounts of complex information, much of which is protected from disclosure, such as trade secret, confidential commercial and personal privacy information, which FDA is prohibited by law from releasing.  Binkley Decl. ¶ 31.

[20]  Cf. Leadership Conference on Civil Rights, 404 F. Supp. 2d at 260 (allowing defendants until September 28, 2006 – two years from the date the complaint was filed and twenty-eight months from the date the FOIA requests were submitted to DOJ's Criminal Division – to produce documents, notwithstanding the denial of a motion to stay the proceedings).  The two-year time allowance was based on a finding by the court that the plaintiff was entitled to *expedited* processing of its FOIA requests.  Id.

request submitted to the FBI twenty-two months prior to that date); Appleton, 254 F. Supp. 2d at 11 (granting a stay to FDA and ordering the parties to confer to clarify plaintiff's FOIA request and propose a document production deadline); Judicial Watch of Florida, Inc. v. United States Dep't of Justice, 102 F. Supp. 2d 6, 9 n.1 (D.D.C. 2000) (noting that the court had granted a stay until June 8, 2000, on a FOIA request submitted to the FBI thirty-four months prior to that date); Edmond v. United States Attorney, 959 F. Supp. 1, 4 (D.D.C. 1997) (granting a stay until April 1, 1998, with the possibility of an extension, on a FOIA request submitted to the U.S. Attorney's Office on August 14, 1992).[21]

Court-ordered document production in FOIA litigation generally requires the FOIA request on which an agency has been sued to be taken out of its respective queue(s) and processed ahead of other FOIA requests that would have reached the front of the queue, and thus been processed, prior to the FOIA request in litigation. Such a result disrupts an agency's first-in first-out processing system. It also allows a plaintiff to vault to the front of the queue – bypassing all requesters who properly submitted FOIA requests before the plaintiff – merely because the plaintiff has filed a lawsuit.

FOIA provides a mechanism for a requester to have its FOIA request removed from the queue for expedited processing. However, a requester must ask for such processing and demonstrate a compelling need. See 5 U.S.C. § 552(a)(6)(E)(i)(I). A compelling need exists when either: (1) a failure to obtain requested records on an expedited basis could reasonably be

---

[21] See also Electronic Privacy Info. Ctr, 2005 U.S. Dist. LEXIS 18876, at *12 (granting a stay until August 31, 2005, on a FOIA request clarified for the FBI forty-eight months prior); Emerson v. CIA, No. 99-0274, 1999 U.S. Dist. LEXIS 19511, at *4 (D.D.C. Dec. 16, 1999) (granting a stay until September 6, 2000, on FOIA request submitted to the Department of State three years prior, also noting that "a stay in excess of two years is not unusual").

expected to pose an imminent threat to the life or physical safety of an individual; or (2) the requester is a person primarily engaged in disseminating information and there is "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v)(I) and (II); 21 C.F.R. § 20.44.  Plaintiff has not attempted to show that either factor is met here, and nothing in Plaintiff's papers suggests that expedited processing would be warranted even if a request for expedited processing had been made.

Simply put, Plaintiff must wait its turn.  See Open America, 547 F.2d at 615 (cautioning that permitting requesters who file suits to "automatically go to the head of the line" would result in a system where "the regulation of priorities in all agencies . . . would very shortly become the function of the courts").

## IV.    CONCLUSION

Defendant, FDA, has demonstrated that the requirements for an Open America stay have been satisfied in regard to Plaintiff's Complaint.  Accordingly, Defendant's motion should be granted and Plaintiff's claim should be stayed at least thirty-eight months, until April 30, 2011.  In the interim, Defendant is willing to provide periodic status reports to the Court and to Plaintiff, regarding any developments that may affect the anticipated processing date.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

Of Counsel:

JAMES C. STANSEL
Acting General Counsel

GERALD F. MASOUDI
Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

CLAUDIA J. ZUCKERMAN
Associate Chief Counsel for Enforcement
U.S. Dept. of Health & Human Services
Office of the General Counsel
5600 Fishers Lane, GCF-1
Rockville, MD  20857
301-827-3676

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 1:07-cv-01776 (EGS) |
| | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF FREDERICK J. SADLER

I, Frederick J. Sadler, declare as follows:

1. I am the Director of the Division of Freedom of Information (DFOI), Office of

Management Programs, United States Food and Drug Administration (FDA), located in

Rockville, Maryland. I have held this position since March 2007. I served as the Acting Director

of DFOI between December 2006 and March 2007. I previously served as the Denials and

Appeals Officer in DFOI from July 2000 to December 2006.

2. In my capacity as Director of DFOI, my responsibilities include supervising the

receipt, tracking, and distribution for processing of requests for FDA records under the Freedom

of Information Act (FOIA), 5 U.S.C. § 552. I also supervise the denials and appeals processes

for the agency, counsel agency components on information disclosure and privacy issues, and

serve as the agency's Privacy Officer.

3. The statements made in this declaration are based upon my personal knowledge,

information made known to me in my official capacity, and information available to me in my

official capacity and about which I have become knowledgeable.

4. I submit this declaration in support of the government's motion for a stay of proceedings in the above-captioned matter. The purpose of my declaration is to set forth DFOI's system for managing FOIA requests and DFOI's actions on plaintiff Judicial Watch, Inc.'s, FOIA request – which is one of approximately 11,400 FOIA requests received by DFOI in 2007.

DFOI'S SYSTEM FOR MANAGING FOIA REQUESTS

5. Under FDA's regulations at 21 C.F.R. § 20.40(a), all requests for FDA records must be made in writing to the Freedom of Information Staff at FDA, which is currently known as "DFOI." FDA has created an electronic tracking system, the Agency Information Management Systems (AIMS), to store and track requests for documents submitted pursuant to FOIA. DFOI began using the AIMS tracking system in January 2006. As of that time, when a FOIA request is received by DFOI, an FOI technician on my staff scans the request into a PDF format, logs and uploads the request into AIMS, and assigns the request a reference number. The reference number reflects the calendar year in which the request was received and the number of FOIA requests received by DFOI to date during that particular calendar year.

6. Under the AIMS system, once a FOIA request is logged in, the AIMS systems sends a letter to the requester acknowledging FDA's receipt of the request (the acknowledgment letter). The acknowledgment letter is sent by U.S. mail and leaves DFOI's office within one business day after the request is logged into AIMS. The acknowledgment letter also notifies the requester that FDA will respond to the request as soon as possible, and invites the requester to contact FDA at a designated phone number and address if the requester has any questions related to the request.

2

7.  Because of FDA's size and the vast number of documents generated in the course of agency business, FDA has created a decentralized system for processing FOIA requests. Accordingly, after an FOI technician receives, scans, and logs an incoming request, he or she directs AIMS to forward, or "route," the request to the FDA office(s) most likely to possess responsive records (the action office(s)).  I am available to consult with the FOI technicians in the event that the routing of a particular request is not clear from the text of the request.

8.  FDA is composed of five centers responsible for regulating foods, drugs, devices, biologics, and veterinary medicine, and numerous regional and district offices across the United States.  Each center has separate FOIA staff who are responsible for locating, organizing, reviewing, redacting, and producing documents responsive to FOIA requests for products regulated by that center.  Most other offices have at least one staff member who is trained to respond to FOIA requests.

<u>DFOI'S ACTIONS ON JUDICIAL WATCH'S FOIA REQUEST</u>

9.  By letter dated May 9, 2007, Judicial Watch submitted a FOIA request to FDA.  <u>See</u> Letter from Plaintiff to FDA (May 9, 2007), Ex. 1.  The request was received in DFOI on May 10, 2007.  Plaintiff's request sought agency records, since January 2004, concerning the following subjects:

(a)    correspondence between Merck and FDA regarding the vaccine Gardasil;

(b)    correspondence between GlaxoSmithKline (GSK) and FDA regarding approval for the vaccine Cervarix;

(c)    correspondence regarding any new drug application seeking approval for the prevention of human papillomavirus (HPV) and/or cervical cancer;

3

(d)     reports to FDA by consumers, health professionals, and FDA-regulated companies made to the Vaccine Adverse Event Reporting System regarding problems with the HPV vaccine; and

(e)     third-party communications encouraging approval of any or all vaccines for HPV.

10. DFOI logged in this request and assigned it reference number 2007-4707, reflecting that it was the 4,707th FOIA request FDA received during the calendar year 2007.

11. By letter dated May 10, 2007, FDA acknowledged receipt of Judicial Watch's FOIA request and stated that the agency would respond as soon as possible. See Letter from FDA to Plaintiff (May 10, 2007), Ex. 2. This letter invited Judicial Watch to contact FDA at a telephone number and address provided therein if Judicial Watch had any questions related to the request.

12. DFOI forwarded Judicial Watch's FOIA request to the Division of Disclosure and Oversight Management's Access Litigation and Freedom of Information Branch (ALFOI) in the Center for Biologics Evaluation and Research (CBER) because Judicial Watch's request seeks documents related to products within CBER's regulatory responsibility and, therefore, that agency component is most likely to have responsive documents.

13. After forwarding Judicial Watch's FOIA request to CBER, DFOI determined that additional agency components might also have responsive records. Accordingly, DFOI also forwarded Judicial Watch's request to the Division of Dockets Management (October 10, 2007), the Center for Drug Evaluation and Research (October 19, 2007), the Office of Chief Counsel (October 19, 2007), the Office of Public Affairs (October 19, 2007), the Office of Legislation (October 19, 2007), and Office of Regulatory Affairs (October 19, 2007). DFOI forwarded Judicial Watch's FOIA request to the Office of Executive Secretariat (February 14, 2008) and the

4

Immediate Office of the Commissioner (February 19, 2008), as it became apparent that these agency components might also have responsive records.

14. As of the date I have signed my declaration, several of the FDA components have searched for documents potentially responsive to Judicial Watch's FOIA request. I have been informed that:

(a) CBER's ALFOI provided documents (on a CD ROM) to Judicial Watch but, because ALFOI's production was a partial response only,[1] the request is still open to CBER;

(b) the Office of Chief Counsel did not locate any responsive documents;[2]

(c) the Center for Drug Evaluation and Research did not locate any documents that are responsive to Judicial Watch's request;[3]

(d) the Division of Dockets Management provided several hundred pages of responsive documents to Judicial Watch;[4]

(e) the Office of Regulatory Affairs did not locate any responsive documents;[5]

(f) Judicial Watch's FOIA request is still pending in the Office of Legislation;

(g) potentially responsive documents from the Office of Public Affairs are currently being reviewed for responsiveness and releasability;

---

[1] See Letter from FDA to Plaintiff (May 14, 2007), Ex. 3.

[2] See Letter from FDA to Plaintiff (Feb. 8, 2008), Ex. 4.

[3] See Letter from FDA to Plaintiff (Feb. 11, 2008), Ex. 5.

[4] See Letter from FDA to Plaintiff (Feb. 15, 2008), Ex. 6.

[5] The Office of Regulatory Affairs "re-routed" the request to CBER, which indicates that that FDA component did not have any responsive documents.

5

(h) potentially responsive documents from the Office of the Executive Secretariat are currently being reviewed for responsiveness and releasability; and

(i) the Immediate Office of the Commissioner is currently conducting a search for potentially responsive documents.

15. FDA takes its responsibilities in the administration of its FOIA program very seriously; however, the personnel resources available to the agency and its components are insufficient to keep up with the large number of requests received and the increased complexity of these requests.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Frederick J. Sadler
Director
Division of Freedom of Information
Office of Management Programs
Food and Drug Administration

Executed on February 27, 2008, in Rockville, Maryland.

6

05/09/2007 10:00 FAX 202 646 5199          JUDICIAL WATCH, INC.                      ☑002



**Judicial Watch**

*Because no one
is above the law!*

May 9, 2007

**VIA CERTIFIED MAIL & FAX**

Betty B. Dorsey
Director, FOI Staff
U.S. FOOD AND DRUG
  ADMINISTRATION (FDA)
5600 Fishers Lane (HFI-30)
Rockville, MD 20857
301-443-1726 fax
(Art. No.: 70051160000150194897)

**07-4707**

**RECEIVED**

MAY 1 0 2007

**FDA DFOI (HFI-35)**

**Re:  Freedom of Information Act Request**

Dear Ms. Dorsey:

        Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552, Judicial Watch, Inc. hereby requests that the U. S. Food and Drug Administration
(hereafter "FDA") produce the following agency records concerning the following
subjects within twenty (20) business days:

1.  Correspondence between Merck and the FDA regarding the vaccine
    Gardasil.

2.  Correspondence between GlaxoSmithKline (GSK) and the FDA regarding
    approval for the vaccine Cervarix.

3.  Correspondence regarding any new drug application seeking approval for
    the prevention of human papillomavirus (HPV) and/or cervical cancer.

4.  Reports to the FDA by consumers, health professionals and FDA
    regulated companies made to the Vaccine Adverse Event Reporting
    System regarding problems with the HPV vaccine.

5.  Third party communications encouraging the approval of any or all
    vaccines for HPV.

        The time frame for this request is January 2004 to present.

---

501 School Street, SW  •  Suite 500  •  Washington, DC 20024  •  Tel: (202) 646-5172  •  (888) JW-ETHIC
Fax: (202) 646-5199  •  email: info@judicialwatch.org  •  Web Site: www.JudicialWatch.org

Ex. 1

05/09/2007 09:28 FAX 202 646 5199          JUDICIAL WATCH, INC.                            ☑003

**Food and Drug Administration**
**FOIA Request**
**May 9, 2007 __**
**Page 2 of 7**

For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. Judicial Watch, Inc. regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

**Food and Drug Administration**
**FOIA Request**
**May 9, 2007 __**
**Page 3 of 7**

As a member of the news media, Judicial Watch uses the following means, among others, to publish and disseminate its distinctive work to the public:

(1)    Judicial Watch maintains an Internet site, www.JudicialWatch.org, where the public can review records obtained through FOIA and read editorial works prepared by Judicial Watch, Inc., including news releases, based on FOIA materials. This website is viewed by over 20,000 people per day on average, and on several occasions, has logged up to 1,000,000 visitors in a single day.

(2)    Judicial Watch also publishes a monthly newsletter in which it publishes its own editorial works and presents, analyzes, and explains information it obtains through FOIA. Judicial Watch, Inc.'s newsletter is sent to approximately 140,000 individuals each month. The organization also utilizes an e-mail Infonet service that sends out updates of Judicial Watch's activities over the Internet to almost 18,000 persons.

(3)    Judicial Watch also periodically publishes and disseminates its own distinct works in the form of books and reports. For example:

- September 1998 – Judicial Watch, Inc. published the Interim Report on Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office. This 145-page report was accompanied by nearly 4,000 pages of supporting documentation and was crafted, in part, from the raw materials obtained by Judicial Watch through FOIA requests, among other regular means.

- August 1999 – Judicial Watch published Filegate Status Report, which is 136 pages long and is supported by nearly 1000 pages of documentation.

- March 2001 – Judicial Watch published The Judicial Watch Florida Recount, an independent, non-partisan analysis of the results of Florida's hotly contested 2000 Presidential election based upon a sampling of ballots reviewed by Judicial Watch pursuant to Florida's version of FOIA.

- February 2002 – Judicial Watch published The Judicial Watch 2002 "State of the Union" Report, Bush Administration Ethics Enforcement: "A Failure of Leadership."

- September 2002 – Judicial Watch published Fatal Neglect: The U.S. Government's Continuing Failure to Protect American Citizens from Terrorists.

Case 1:07-cv-01776-EGS    Document 10-2    Filed 02/29/2008    Page 10 of 10

**Food and Drug Administration**
**FOIA Request**
**May 9, 2007__**
**Page 4 of 7**

- November 21, 2003 – Judicial Watch produced Analysis of GAO Testimony: US Postal Service – Clear Communication With Employees Needed Before Reopening of Brentwood Facility. (GAO-04-2057T/October23, 2003). Comptroller General of the United States David M. Walker, in a reply to Judicial Watch's Analysis of GAO Testimony, wrote on December 17, 2003, "We view Judicial Watch as an important accountability organization in Washington, D.C."

- June 29, 2005 – Judicial Watch produced a special Report US Border Patrol Survey Analysis, an analysis of documents produced under FOIA. http://www.judicialwatch.org/borderpatrolreport.shtml

- February 3, 2006 – Judicial Watch held an educational panel at the National Press Club and published a Special Report of the event, "A Discussion of Ethics in Washington." http://www.judicialwatch.org/archive/2006/special-report-ethics.pdf

- May 9, 2006 – Judicial Watch produced The Clinton RU-486 Files, a special report of the Clinton administration's effort to put the abortion drug RU-486 on the market in the United States, based on documents obtained from the National Archives at the Clinton Presidential Library and in the course of a five year FOIA litigation battle between Judicial Watch and the U.S. Food and Drug Administration (FDA). http://judicialwatch.org/archive/2006/jw-ru486-report.pdf

- June 15, 2006 – Judicial Watch publishes "Jesse Jackson Exposed," a special report details the intimidation and shakedown tactics of Jackson's so-called civil rights organization, the Rainbow Push Coalition. http://judicialwatch.org/archive/2006/jackson-report.pdf

- October 30, 2006 – Judicial Watch releases a special report "*Academia Semillas del Pueblo* (Seeds of the People Academy): Training the Next Generation of Mexican Revolutionaries with American Tax Dollars." The report includes excerpts of new documents obtained by Judicial Watch through the California Public Records Act that highlight the school's radical agenda. http://www.judicialwatch.org/archive/2006/SR_academia%20semillas.pdf

- November 27, 2006 – Judicial Watch publishes New Clinton White House Records Raise Disturbing Questions about Hillary Clinton and Abortion. Judicial Watch's report includes excerpts of new documents obtained by Judicial Watch from the Clinton Presidential Library in Little Rock, Arkansas. http://www.judicialwatch.org/archive/2006/SR_Clinton%20abortion.pdf

_ ___ 646 5199          JUDICIAL WATCH, INC.                    ☐006

**Food and Drug Administration**
**FOIA Request**
**May 9, 2007** __
**Page 5 of 7**

Judicial Watch also publishes and disseminates its distinctive work by
participating in public conferences and seminars, including its own "Ethics in
Government" conferences held in Pasadena, California (1999), Washington, DC (2000),
and Miami, FL (2001).

Judicial Watch hold quarterly education panels at the National Press Club in
Washington DC that have been televised by C-SPAN. Past panel discussions have been:
"Defining 'Judicial Activism' in the Context of the Culture Wars," "A Discussion of
Ethics in Washington," "The Case for Open Government," "Conservative Perspectives on
the Alito Nomination," "The Role of Grassroots Groups in the Supreme Court
Nominating Process," "New Fronts in the Immigration Battle," and "How to Fight
Corruption in Government."

Judicial Watch also works with other media organizations to publish and
disseminate distinctive work to the public, and representatives of Judicial Watch appear
frequently on nationally broadcast television and radio programs. Judicial Watch has
been granted press credentials at a number of national conventions and other events.

On February 16, 2005, Judicial Watch was rated by the highly respected capitol
newspaper *The Hill* as being on of the nation's top ten "watchdogs."

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of
the news media. See *National Security Archive v. U.S. Department of Defense*, 880 F.2d
1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of
the news media in other FOIA litigation. See *Judicial Watch, Inc. v. U.S. Department of
Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Dep't of Defense*,
2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006).

Judicial Watch also is entitled to a complete waiver of both search fees and
duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

> shall be furnished without any charge or at a charge
> reduced below the fees established under clause (ii) if
> disclosure of the information is in the public interest
> because it is likely to contribute significantly to public
> understanding of the operations or activities of government
> and is not primarily in the commercial interest of the
> requester. 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by
definition, it has no commercial purpose. Judicial Watch exists to educate the public
about the operations and activities of government, as well as to increase public
understanding about the importance of ethics and the rule of law in government. The

Case 1:07-cv-01776-EGS     Document 10-2     Filed 02/29/2008     Page 12 of 19

**Food and Drug Administration**
**FOIA Request**
May 9, 2007 __
Page 6 of 7

particular records requested herein are sought as part of Judicial Watch ongoing efforts document the operations and activities of the federal government and to educate the public about these operations and activities.

Courts applying the "public interest" fee waiver provision of FOIA typically take into account  four factors in determining whether to grant a waiver:  (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding.  See *D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(i)-(iv).  Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely the process pharmaceutical companies must go thorough to demonstrate the safety of proposed vaccines.  Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience.  The American public is obviously interested in the safety and medical concerns of the drug approval process of the FDA.

Indeed, the American public deserves full disclosure of the details of the decision of the FDA to approve Gardasil, or as it is commonly known as the HPV vaccine, as recommended to prevent cervical cancer.  Additionally, the HPV vaccine has been added to the schedule of vaccines without extensive public disclosure of information about the safety and effectiveness of the vaccine.  Without question the public deserves full disclosure of the information provided to the FDA during the approval process.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report.  Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets.  It also will make the records available to other members of the media or researchers upon request.  Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about the safety, long-term effects and effectiveness of the HPV vaccine.  Without question the records requested by

**Food and Drug Administration**
**FOIA Request**
**May 9, 2007 __**
**Page 7 of 7**

Judicial Watch will shed further light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days. We take the statutory deadlines of the Freedom of Information Act very seriously – as does the Archivist of the United States:

> **"Let's face it, access delayed is access denied."**
>                     Dr. Allen Weinstein
>                     Ninth Archivist of the United States
>                     National Archives and Records Administration
>                     September 26, 2006
>                     American Society of Access Professionals Keynote Speech
>                     Washington, DC

Thank you for your cooperation.

Sincerely,

Deronda Grothe
Program Manager

501 School Street, SW    Suite 500    Washington, DC 20024    Tel: (202) 646-5172    (888) JW-ETHIC
Fax: (202) 646-5199    email: info@judicialwatch.org    Web Site: www.JudicialWatch.org

05/09/2007 09:26 FAX 202 646 5199          JUDICIAL WATCH, INC.                                    ⌀001

501 School Street, SW, Suite 500
Washington, DC 20024
Phone: 202-646-5172
Fax: 202-646-5199

# **Judicial Watch**

# **Fax**



| **To:** | Betty Dorsey<br>Director, FOI Staff<br>Food and Drug Administration | **From:** | Dee Grothe<br>Judicial Watch |
| --- | --- | --- | --- |
| **Fax:** | 301-443-1726 | **Date:** | May 9, 2007 |
| **Re:** | Freedom of Information Act Request | **Pages:** | 8 (including cover) |

☑ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☑ **Please Reply**   ☐ **Please Recycle**

•**Comments:** If you do not receive all pages, please call 202-646-5172.

## Original will follow by First Class mail.

PARKING & INFORMATION OFC

2007 MAY -9  AM 11: 21

JUDICIAL WATCH INC
DEE GROTHE
501 SCHOOL ST SW STE 500
WASHINGTON  DC  20024

05/10/2007

In Reply refer to:
2007-4707
Your reference:

Dear Requester:

The Food and Drug Administration (FDA) has received your Freedom of Information Act (FOIA) request for records regarding:

    MERCK - GARDASIL; GLAXOSMITHKLINE - CERVARIX RPTS, CORR, VAERS, ETC

We will respond as soon as possible and may charge you a fee for processing your request.  If you have any questions about your request, please call   us at 301-827-6567 or write to us at:

                Food and Drug Administration
                Division of Freedom of Information
                5600 Fishers Lane, HFI-35
                Rockville, MD 20857

If you call or write, use the reference number above which will help us to answer your questions more quickly.

Ex. 2



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

---

Food and Drug Administration
1401 Rockville Pike
Rockville, MD 20852-1448

May 14, 2007

Dee Grothe
Judicial Watch Inc.
501 School Street SW, Suite 500
Washington, DC 20024

In reply refer to file: F2007-4707

Dear Ms. Grothe,

This is a partial response to your Freedom of Information Act request dated May 9, 2007 in which you requested information relating to Gardasil vaccine. Enclosed are reports from the Vaccine Adverse Event Reporting System. Your request was received in the Center for Biologics Evaluation and Research on May 10, 2007 for processing.

We are providing the VAERS reports on CD-Rom in pdf format. The pdf files can be searched using the "find" f(click on "edit" on the top tool bar, then click "find" and enter the search term.) feature in adobe acrobat

Enclosed are reports that may be responsive to your request.

The following will be included in a monthly invoice:

| | | | |
|---|---|---|---|
| Search | 1/4  Hour | $ | 10.25 |
| Reproduction | 1 CD-Rom | $ | 1.00 |
| Review | 0 Hour | $ | 0.00 |
| **Total** | | **$** | **11.25** |

The above charges may not reflect final charges for this request.  Please DO NOT send any payment until you receive an invoice from the Agency's Freedom of Information Staff (HFI-35).

If we can be of further assistance, please let us know by referencing the above file number.  You can reach me by phone at 301-827-2000.

Sincerely,

Ed Castilla

Ed Castilla
Access Litigation and Freedom of Information Branch (HFM-48)
Center for Biologics Evaluation and Research

Ex. 3



**DEPARTMENT OF HEALTH & HUMAN SERVICES**    Office of the General Counsel

Office of the Chief Counsel
Food and Drug Administration
5600 Fishers Lane, GCF-1
Rockville, MD 20857

FEB    8  2008

Deronda Grothe
Judicial Watch
501 School Street, SW
Suite 500
Washington, D.C.  20024

Re: FOIA Request No. 2007-4707

Dear Ms. Grothe:

Your request for records from the Food and Drug Administration dated May 9, 2007, was sent to the Office of the Chief Counsel.  This is to advise you that we have no responsive records from the Office of Chief Counsel.

Sincerely yours,

Ann H. Wion
Deputy Chief Counsel
for Program Review

cc:    HFI-35

Ex. 4

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**   <u>Public Health Service</u>

Center for Drug Evaluation and Research
Office of Regulatory Policy
Division of Information Disclosure Policy

File No.: F07-4707                                       February 11, 2008

Deronda Grothe
Program Manager
Judicial Watch
501 School Street, SW
Washington, DC 20024

Dear Ms. Grothe:

This is in response to your letter dated May 9, 2007, in which you requested the following records for the time frame of January 2004 to present:

1.  Correspondence between Merck and the FDA regarding the vaccine Gardasil.
2.  Correspondence between GlaxoSmithKline (GSK) and the FDA regarding approval for the vaccine Cervarix.
3.  Correspondence regarding any new drug application seeking approval for the prevention of human papillomavirus (HPV) and/or cervical cancer.
4.  Reports to the FDA by consumers, health professionals and FDA regulated companies made to the Vaccine Adverse Event Reporting System regarding problems with the HPV vaccine.
5.  Third party communications encouraging the approval of any or all vaccines for HPV.

Your request was received in the Center for Drug Evaluation and Research (CDER) on October 22, 2007. CDER was one of the agency components assigned to process your request.

A search of CDER's records, including its internal electronic databases and the records of the Division of Antiviral Products, the Office of Oncology Drug Products, the Division of Drug Oncology Products, the Division of Biologic Oncology Products, and the Division of Drug Information, did not locate any responsive records. Therefore, we have no documents to provide you.

If you have any questions or concerns regarding this matter, please do not hesitate to contact Claudia Zuckerman (301-827-3676) in FDA's Office of Chief Counsel.

Sincerely,

Howard R. Philips

Howard R. Philips
Supervisory Regulatory Counsel

cc:     Claudia Zuckerman, Esq.



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

DEE GROTHE
JUDICIAL WATCH INC
501 SCHOOL ST SW STE 500
WASHINGTON DC 20024

02/15/2008

In Reply refer to:
2007-4707

Dear Requester:

This is in reference to your request(s) for record(s) from the Food and Drug Administration
(FDA) pursuant to the Freedom of Information Act (FOIA).

MERCK - GARDASIL; GLAXOSMITHKLINE - CERVARIX RPTS, CORR, VAERS, ETC

The enclosed records responsive to your request were located within the Agency's Division of
Dockets Management.  Other agency components will evaluate and respond to your request
under separate cover.

The following charges for this request to date may be included in a monthly invoice:
   Reproduction   Search   Review   Fiche   Other       Total

Reproduction=$0.00   Search=$0.00   Review=$0.00   Fiche=$0.00   Other=$0.00   Total=$0.00

All communications concerning this request should be identified with the reference number
above and addressed as follows:

> Food and Drug Administration
> Freedom of Information Staff, HFI-35
> 5600 Fishers Lane (Room 6-30)
> Rockville, MD 20857

Sincerely Yours,

*Theola Myo Khin*

Theola Myo Khin
Freedom of Information Specialist

Enclosures:
  if indicated

Ex. 6

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-01776 (EGS) |
| | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

### DECLARATION OF JOANNE BINKLEY

I, Joanne Binkley, declare as follows:

1. I am the Deputy Director of the Office of Communication, Training and

Manufacturers Assistance (OCTMA), Center for Biologics Evaluation and Research (CBER),

United States Food and Drug Administration (FDA), in Rockville, Maryland. I am also the

Acting Director of OCTMA's Division of Disclosure and Oversight Management (DDOM).

2. As Acting Director of DDOM, I have overall responsibility for the disclosure of

documents officially maintained by CBER, the center in FDA that regulates biologic products

such as blood, tissue, vaccines, and cellular and gene therapy. As the Deputy Director of

OCTMA, my duties are to assist OCTMA's director in overseeing staff in three divisions --

DDOM, plus the Division of Manufacturers Assistance and Training, which provides assistance

to manufacturers of CBER-regulated products and manages the Center's professional and

management training program, and the Division of Communications and Consumer Affairs,

which handles the Center's communication with the public and trade press. I have been the

1

Deputy Director of OCTMA and the Acting Director of DDOM since January 6, 2008. Prior to

that date, I was the Director of DDOM for approximately eight and one-half years.

3. DDOM is composed of two branches, the Access Litigation and Freedom of

Information Branch (ALFOI) and the Congressional and Oversight Branch (COB). ALFOI is

responsible for redacting for disclosure CBER-maintained documents in response to: (a)

Freedom of Information Act (FOIA) requests; (b) litigation-related document requests; (c) web-

posting obligations in the 1996 Electronic Freedom of Information Act Amendments (EFOIA);

(d) web-posting obligations in the Federal Advisory Committee Act (FACA); and (e) other

requests that do not fit within any of the previous categories. Litigation-related document

production covers disclosure in response to discovery requests, third-party subpoenas, and court

orders to fulfill FOIA requests.

4. ALFOI consists of seven people – one branch chief, five full-time consumer safety

officers,[1] and one paralegal specialist, who handle the day-to-day work involved in the document

disclosure duties described in paragraph 3.

5. The statements made in this declaration are based on my personal knowledge,

information made known to me in my official capacity, and information available to me in my

official capacity and about which I have become knowledgeable.

6. The purpose of this declaration is to: (a) describe ALFOI's document production

process (¶¶ 7-14); (b) describe ALFOI's workload (¶¶ 15-25); (c) explain the efforts to reduce the

backlog of FOIA requests (¶¶ 26-28); and (d) outline the action necessary to finish processing

plaintiff's FOIA request dated May 9, 2007 (¶¶ 29-31).

---

[1] The fifth consumer safety office began working in ALFOI on November 26, 2007.

ALFOI'S DOCUMENT PRODUCTION PROCESS

*FOIA Requests*

7.  FOIA requests for CBER-maintained documents are forwarded to ALFOI from FDA's

Division of Freedom of Information (DFOI) in the Office of Management Programs, Office of

Commissioner, FDA.  ALFOI places each request in one (or more) of seven queues of pending

requests, based on the complexity and subject matter of the requested documents.  Generally,

with allowances for efficiency (see paragraphs 11-12), requests in each queue are assigned to

reviewers for processing on a first-in, first-out basis.

8.  ALFOI's queues consist of the Fast, Simple, 510(k), Counter-Terrorism- Related,

Influenza, Adverse Event, and Complex Tracks.  The Counter-Terrorism-Related, Influenza, and

Adverse Event Tracks have simple and complex sub-queues.

A.  <u>Fast Track</u>:  Requests in the Fast Track can be answered with readily available

documents that do not need to be redacted.  Requests are placed in this track usually because they

seek documents that previously were reviewed and redacted (typically in response to a previous

document request) or information that is publicly available (often from documents that were

reviewed, redacted, and placed on FDA's website).

B.  <u>Simple Track</u>:  Requests in the Simple Track require minimal processing time,

estimated to be approximately one day of staff processing time.

C.  <u>510(k) Track</u>:  Requests in the 510(k) Track seek pre-market notification

(510(k)) documents submitted by manufacturers prior to commercial distribution of devices that

are regulated by CBER.

D.  <u>Counter-Terrorism-Related Track</u>:  Requests in the Counter-Terrorism-

3

Related Track seek documents related to the anthrax, smallpox, and plague vaccines; vaccinia immune globulin; and other counter-terrorism matters. This track, with simple and complex sub-queues, is usually managed by one COB staff member with expertise in these substantive areas.

E. Influenza Track: Requests in the Influenza Track seek documents related to pandemic influenza, influenza vaccine, or other flu-related topics. This track, with simple and complex sub-queues, is usually managed by one COB staff member with expertise in these areas.

F. Adverse Event Track: The Adverse Event Track/simple sub-queue involves producing adverse event line-listings, which do not require redaction. The Adverse Event Track/complex sub-queue involves producing adverse event documents, including the actual adverse event reports, which must be reviewed and redacted.

G. Complex Track: The Complex Track includes all requests that do not meet the criteria for any of the other queues. Such requests often involve voluminous records and usually require extensive time to locate, review, and/or redact the records.

9. It is possible for one FOIA request to be assigned to more than one queue. For example, a portion of an otherwise complex request may be assigned to the Fast Track, thereby allowing a reviewer to complete that portion of the request before the more complex portions are completed. It is also possible that, once a reviewer starts working on a request, the reviewer discovers that the request should be moved to a more appropriate queue and then places the request in line in the appropriate queue(s) consistent with the FOIA reference number assigned by DFOI, which is based on the date the request was originally received by FDA.

10. When a request is assigned to a reviewer for processing, the reviewer must search for and collect potentially responsive documents from various central file locations. In addition, a

4

reviewer may need to contact CBER personnel and direct them to search their individual files;

for requests in a complex queue or sub-queue, this process may necessitate extensive searches for

documents in files kept by employees working in any one of twenty-four divisions comprising

nine main offices in CBER. After the reviewer collects potentially responsive documents, (s)he

conducts an initial review to verify that the documents are, in fact, responsive to the requests.

Documents available only in hard-copy are scanned into electronic files. Next, the reviewer

conducts a line-by-line, word-by-word review of the responsive documents to determine which,

if any, exemptions apply, and then electronically redacts the material, as appropriate.[2] ALFOI

may consult with FDA's Office of Chief Counsel to resolve questions on complex or novel

disclosure issues. Then, the reviewer conducts a quality control check to ensure that the

responsive documents have been properly prepared for public disclosure and, finally, prepares

copies of the responsive documents for delivery to the requester. Throughout the process,

ALFOI's branch chief and I may provide substantive input regarding the search's scope and the

releasibility of records.

    11. In a complex queue or sub-queue, it is not always efficient to complete one request

before beginning the next request, and a reviewer often works on more than one request at a time.

---

[2] The majority of documents that are responsive to FOIA requests received by CBER contain information that is exempt from disclosure (for example, trade secret, confidential commercial, personal privacy and/or deliberative process information). The Federal Food, Drug, and Cosmetic Act (FDCA) prohibits the release of trade secret information to persons other than Department of Health and Human Services employees, to Congress, or to the courts where relevant in cases brought under the FDCA. 21 U.S.C. § 331(j). The Trade Secrets Act prohibits the release of trade secret information unless otherwise authorized by law. 18 U.S.C. § 1905. In addition, FDA regulations provide that: (a) trade secret and privileged or confidential commercial information is unavailable for public disclosure; (b) intra-agency pre-decisional information that is part of an agency's decision-making process is privileged and exempt from disclosure; and (c) identifying information in medical or similar files, which, if disclosed, would be an unwarranted invasion of personal privacy, is unavailable for public disclosure. 21 C.F.R. §§ 20.61, 20.62, 20.63, respectively.

Processing a complex request can be delayed for reasons including the need to identify where additional responsive records may be located, to determine which exemptions may apply, or to consult with other parties or other sources about the propriety of releasing certain information. To improve efficiency during the waiting period, the next unassigned request in line will be assigned to a reviewer for processing. Thus, large requests often proceed alongside smaller requests. This approach best utilizes staff time and decreases the overall time for document production.

12. Once a response for records is complete, other pending requests for the same records are answered at that time, as they can now be processed without further review/redaction. This approach allows ALFOI to be more effective with its limited resources by providing full or partial responses to all requesters at the time that the newly redacted documents are available.

### *Litigation-Related Document Production*

13. To produce documents in response to discovery requests, third-party subpoenas, and court orders to fulfill FOIA requests, reviewers perform all of the tasks in paragraph 10, plus additional steps that can increase, *by at least two-fold*, the time to process the request. The extra responsibilities associated with litigation-related document production typically include bates-stamping, creating a Vaughn Index or privilege log, and conducting a quality control check of the index/log to assure its accuracy and completeness.[3] ALFOI must shift resources away from processing other FOIA requests to meet strict timetables generally set for producing documents in response to discovery requests or third-party subpoenas. Court-ordered production may

---

[3] ALFOI prepares Vaughn Indexes and privilege logs by creating a unique database to capture designated information (and adding, for example, pull-down menus to minimize data-entry errors), determining the appropriate description for the information protected in each record, and data-entering each description, redaction, and claimed privilege.

require a FOIA request about which FDA has been sued to be taken out of its respective queue(s) and processed ahead of other FOIA requests that would have reached the front of the queue, and thus been processed, prior to the FOIA request in litigation.

*Web-Posting*

14. To comply with the statutory requirements of EFOIA and FACA, ALFOI reviews and redacts for posting on FDA's website: (a) documents that have been anticipated to be frequently requested, such as product approval letters, summary reviews for approved products, and warning letters; and (b) briefing materials for advisory committee members (which are documents that are provided to committee members to prepare them for an upcoming FDA advisory committee meeting), and advisory committee members' curriculum vitae. Although the web-posting activities ultimately reduce the number of incoming FOIA requests each year, they nevertheless require considerable up-front resources from the staff in ALFOI.

## ALFOI'S WORKLOAD

15. As of January 31, 2008, ALFOI's current workload includes a backlog of approximately 438 FOIA requests plus new FOIA requests arriving almost daily. ALFOI also has continuing obligations to review, redact, and web-post documents to comply with disclosure requirements in EFOIA and FACA. In addition, ALFOI and COB are working jointly on a litigation-related document production in a FOIA lawsuit, Olmstead v. Department of Defense, No. 05-0018 (D.D.C.). The document production involves reviewing for responsiveness over approximately 20,000 pages of documents, reviewing and redacting approximately 5,000 responsive pages, and preparing a Vaughn Index. DDOM anticipates that at least two employees will need to continue working nearly full-time on this FOIA request to meet the court deadline.

7

16. In 2006 and 2007, DFOI received and routed about the same number of FOIA requests to ALFOI -- 343 requests in 2006 and 345 requests in 2007. In 2005, the number of requests received and routed to ALFOI was slightly higher -- 363 requests. Between 2005 and 2007, ALFOI closed 363 requests, 487 requests, and 428 requests in 2005, 2006, and 2007, respectively.[4] As of December 31, 2007, ALFOI's backlog of FOIA requests consisted of 432 request.

17. Workload *numbers* do not necessarily indicate the *burden* or resource demands of document requests because various factors can increase the amount of resources expended on a request, including: (a) the difficulty in searching for and locating potentially responsive documents (some requests involve numerous files maintained by individual employees or may ask for documents generated fifty or more years ago); (b) the sheer volume of pages of potentially responsive documents (which then require sorting to eliminate non-responsive or duplicative documents); (c) the complexity of the information in the documents including the amount of protected or privileged information in the responsive documents, which needs to be redacted; and (d) the amount of time needed to resolve any novel or difficult disclosure issue raised by the request.

18. The following examples are two FOIA requests that were recently completed by ALFOI. The first request required an extensive search to retrieve responsive documents; the second request required extensive redactions.

A. This request listed four items, comprising thirty-four discrete requests.

---

[4] Beginning in January 2006, FDA moved to an agency-wide database system for tracking FOIA requests. Prior to that time, CBER maintained its own database for tracking FOIA requests that it was responsible for processing. The FOIA request numbers in this paragraph have been provided by CBER's database (2005 figures) and the agency-wide database (2006 and 2007 figures).

Although the document production consisted of fewer than 1,000 pages of responsive documents (and a CD-ROM containing a line listing of adverse events), ALFOI had to conduct a broad search for responsive documents. One of the four items required ALFOI to search through thirty separate vaccine license applications. Most applications for routinely administered vaccines for childhood diseases have over forty volumes of documents; each volume is estimated to have, on average, approximately 250 pages, which would represent a total of over 10,000 pages. In fact, one of the vaccine applications responsive to this request actually had 232 volumes of documents, requiring a search through approximately 58,000 pages. Identifying all of the documents responsive to this item involved searching through hundreds of thousands of pages. Another item in this request required a CBER scientist to search through more than ten years of laboratory notebooks for specific product testing records. It took the equivalent of one full-time employee approximately twelve weeks to search for and identify documents responsive to these two items in the request. The documents were then reviewed and redacted.

B. This request asked for various subsets of documents for a currently licensed vaccine product that was approved almost forty years ago. In responding to this FOIA request, ALFOI provided the original product application, all supplements to the application, a drug master file for the product, and all lot-release protocols. The documents contained manufacturing information, which is confidential commercial and trade secret information that has to be redacted. It took the equivalent of one full-time employee approximately fourteen weeks to review and redact the records.

19. Because ALFOI has only seven employees, one expansive FOIA request can have a major impact on ALFOI's ability to process FOIA requests in a timely manner. For example, one

9

FOIA request ahead of plaintiff's request in the Complex Track consists of eleven itemized

requests for documents regarding one vaccine, including documents relating to the pre-clinical

phase and the three clinical investigational phases, and documents regarding registration, shelf

life/expiration date, ongoing testing, approval (licensing) and marketing, post-market studies, and

prescription information. ALFOI has estimated that there are at least 30,000 pages that are

potentially responsive to the request. Because of the anticipated volume of documents and

estimated amount of redaction time, the request, unless narrowed by the requester, could require

one full-time reviewer approximately two years to process. This request represents only one of

numerous pending FOIA requests in the Complex Track that will reach the front of the queue

before plaintiff's request.

20. There are few options available to ALFOI to reduce the expansiveness of an

incoming FOIA request. Although a requester may be amenable to narrowing its FOIA requests,

there is no statutory obligation for a requester to minimize the impact its request may have on the

resources available for processing FOIA requests or on the time spent by subsequently submitted

FOIA requests waiting in the queue. A requester is not prohibited from having its FOIA request

require a disproportionate use of ALFOI's resources for processing or from increasing the time

subsequent FOIA requests must wait to reach the front of the queue to be processed.

21. I have been informed that, as of January 31, there are approximately 100 requests in

the Complex Track in front of plaintiff's request.[5] It is difficult to predict when plaintiff's request

will reach the front of the queue because of the wide range of processing time per request in the

Complex Track.

---

[5] The remaining approximately 338 requests are either in other queues described in paragraph 8 or in the Complex Track behind plaintiff's request.

A. Based on data from thirty previously closed requests in the Complex Track, it took an average of about 71 hours to process each request. Using 71 hours as the average processing time for requests in the Complex Track, the plaintiff's request would reach the front of the queue in roughly five years, if one full-time employee were assigned to process requests in this queue.[6] More than one ALFOI staff member is assigned to process requests pending in the Complex Track; however, generally no one is assigned to the Complex Track on a full-time basis because of other existing statutorily mandated or court-ordered document disclosure duties, as described in paragraphs 13-14 and 23-25 of my declaration.

B. Although the average time spent on each request (of the thirty previously closed requests) in the Complex Track was about 71 hours, the time estimates varied greatly, ranging from about 8 hours to about 406 hours per request (median, about 24 hours). The effect of some of the most time-intensive requests can be seen by focusing on a subset of the thirty previously closed requests, i.e., the ten most recently received requests. The time spent on those requests averaged about 156 hours (median, about 66 hours).

22. The current backlog of FOIA requests is also a result of ALFOI's repeated need to re-direct its resources from FOIA requests to meet court-ordered deadlines governing document production in often unpredictable litigation-related matters. Paragraph 23, below, describes the resource-intensive nature of this work and the magnitude of non-FOIA workload obligations that contributes to delays in processing FOIA requests, including plaintiff's. Because the litigation-related document production is performed under court order, ALFOI's small staff has limited

---

[6] This estimate is based on the availability of 32.5 hours per week for FOIA work (which allows the remaining work-week to be available for administrative obligations, including mandatory meetings) and a work-year of 44.5 weeks (which takes into consideration Federal holidays and annual leave).

11

flexibility to work on other pending FOIA requests.

23. In the past three years, ALFOI has been responsible for document processing in

FOIA lawsuits, third-party subpoenas, and discovery matters, including the following cases.[7]

These cases have required ALFOI to devote the resources of one to four staff members at a time

to complete document production by court deadlines.

A. <u>Selden v. FDA</u>, No. 05-0476 (D. D.C.) (Third-party subpoena related to

<u>Securities and Exchange Comm'n v. Selden</u>, No. 05-11805 (D. Mass.)). Between fall 2006

through summer 2007, ALFOI reviewed over 7,000 pages for responsiveness, produced over

6,100 pages after redaction, and prepared a privilege log. Responding to this subpoena required

the equivalent of one full-time employee for over eight months, along with a considerable

amount of supervisory time at the branch and division levels.

B. <u>Securities and Exchange Commission v. Biopure Corp.</u>, No. 05-0506 (D.

D.C.) (Third-party subpoenas). In the second half of 2006, ALFOI printed approximately

500,000 pages from central files and various individuals' files, and organized and reviewed them

to identify potentially responsive documents and eliminate duplicates. Responding to this

subpoena required over 780 hours of staff time or the approximate equivalent of one full-time

employee for six months.[8] The underlying litigation settled before the documents were reviewed

for disclosure and redaction.[9]

---

[7] The current court-ordered document production that ALFOI is managing is described in paragraph 15.

[8] Because files were large and contained complex tables, it took at least twenty minutes to send the files to the printer's memory before the printing could start.

[9] Approximately 113,000 pages were unique (non-duplicative) and responsive; to review and

12

C.  <u>Gannon v. United States</u>, No. 03-6626 (E.D. Pa.) (Discovery requests).
During parts of 2005 and 2006, ALFOI (and others, as noted) assembled, organized, and
reviewed for relevancy approximately 700,000 pages of documents.  ALFOI also assisted the
Department of Justice with other document-related matters during the course of the litigation.
Responding to these discovery requests required two full-time employees (one ALFOI, one
COB) for approximately nine months and other employees from each branch for several months,
and required approximately seventy-five percent of a COB supervisor's time for over a year.

D.  <u>In re: Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder v.</u>
<u>Secretary of HHS</u>, (Fed. Cl. Spec. Master, July 3, 2002) (Discovery obligations).  From 2004
through 2006, ALFOI (and others, as noted) redacted and produced over 110,000 pages of
vaccine license files; also copied and produced transcripts of advisory committee meetings and
line listings of adverse event reports; and prepared a privilege log.  Responding to these
discovery obligations required the approximate equivalent of six full-time employees (two
ALFOI, one COB, and three contract attorneys) for at least three years.

E.  <u>Campaign for Responsible Transplantation v. FDA</u>, No. 1:00cv2849 (D.D.C.)
(FOIA lawsuit).  In 2005, ALFOI (and others, as noted) redacted and produced over 3,100 pages,
and prepared a privilege log.  Producing documents in response to this court order required the
approximate equivalent of one full-time employee for almost one year.  Prior to 2005, thousands
of pages were produced, requiring the equivalent of five full-time employees for approximately
eighteen months.

F.  <u>Other cases</u>.  In the first part of 2005, ALFOI produced over 550 pages in two
other cases -- <u>Sharkey v. FDA</u>, No. 2:04cv0552 (M.D. Fla.) (FOIA case), and <u>Oswalt v. Secretary</u>

redact would have required one full-time employee roughly five years.

of HHS, No. 1:03-2153V (Fed. Cl.) (Third-party subpoena).

24.  As part of its workload, ALFOI also processes documents for posting on FDA's website in compliance with EFOIA and FACA.  This activity reduces the number of incoming FOIA requests and facilitates the broad dissemination of information likely to be requested by the public.  Nevertheless, ALFOI must spend the same resources to review and redact the documents as it would if it were responding to FOIA requests for this information.  In the past three years, ALFOI's database indicates that staff reviewed and redacted the following numbers of pages for proactive posting on CBER's website:  2,162 pages in 2005; 2,499 pages in 2006; and 2,520 pages in 2007.

25. While plaintiff's FOIA request is pending, ALFOI will be obligated to comply not only with all of the responsibilities it has been managing but also with new document disclosure duties mandated by the Food and Drug Administration Amendments Act of 2007 (FDAAA), signed into law September, 2007.  FDAAA dramatically increases ALFOI's responsibilities for pro-active posting of records on FDA's website.  Under the new amendments, ALFOI is required to post (redacted) action packages for approval of biologics license applications that include (a) documents generated by FDA related to its review of the application, (b) documents pertaining to the format and content of the application generated during drug development, (c) a summary review that documents conclusions from all reviewing disciplines about the product, noting critical issues and disagreements and how they were resolved, and (d) other decision documents from the directors of the division and office in which review of the product application occurred.

### RESPONSIVE ACTION TO THE BACKLOG OF FOIA REQUESTS

26.  The workload described in the previous section has placed enormous demands on

ALFOI's small staff, overwhelmed its resources, and resulted in significant processing delays for

FOIA requests. Nevertheless, despite these burdens, ALFOI has succeeded in reducing its FOIA

request backlog by *approximately thirty-four percent* -- from an estimated 659 requests pending

at the end of 2004 to an estimated 432 requests pending at the end of 2007. Thus, between 2005

and 2007, ALFOI closed 227 more requests than it received.[10]

27. DDOM achieved the backlog reduction by implementing several measures, including

re-allocating present personnel resources (i.e., by involving COB staff, not limited to the two

individuals mentioned in paragraph A below, in FOIA requests and litigation-related document

production), maintaining personnel resources, and improving processing time through the use of

new information technology systems.

A. DDOM has had a direct impact on the FOIA request backlog by creating two

additional queues, one in April 2003 and the other in July 2006 -- the Counter-Terrorism-Related

Track and the Influenza Track, respectively – that are usually managed by COB staff with

expertise in those substantive areas. DDOM has been able to make use of funds available for

document disclosure matters relating to those subjects and assigned, on a part-time basis, two

individuals in COB to process FOIA requests in the Counter-Terrorism-Related and Influenza

Tracks, and assist with the litigation-related document requests involving matters that include

counter-terrorism or influenza. This action has increased the total numbers of staff handling

FOIA requests and litigation-related document production, which permits the reviewers in

ALFOI to devote more of their time to responding to FOIA requests pending in other queues,

---

[10] The slight decrease from 2005 to 2006 in FOIA requests routed to ALFOI by DFOI had little impact on ALFOI's reduction of its FOIA request backlog. In 2006, ALFOI received 22 fewer requests than the number of requests it received in 2005; in 2007, it received 2 more requests than it did in 2006. Thus, the net decrease in FOIA requests received by ALFOI from 2005 to 2007 was only 18 requests.

including the Complex Track.

B.  Similarly, DDOM has been able to ensure that more time is available to spend on FOIA requests by having decreased the litigation-related responsibilities of ALFOI reviewers during lengthy court-ordered document production in the autism litigation described in paragraph 23.D.  DDOM obtained funds to hire on contract several attorneys to assist with these litigation document productions, which enabled ALFOI to devote more time to clearing the backlog of FOIA requests.

C.  DDOM hired and trained personnel to the extent possible -- i.e., subject to the limitation of available funds.  New hires for ALFOI in 2004, 2006, and 2007 were able to replace four of five positions that had become vacant between 2004 - 2006.[11]  In addition, DDOM requested, and recently received, funding to hire two additional full-time employees for ALFOI.[12]  An increase from seven to nine employees will be a twenty-nine percent rise in the number of ALFOI staff members.[13]

D.  For approximately six weeks in November–December 2007, DDOM was able to increase its staff, on a very temporary basis, with two FDA employees outside of DDOM to assist in processing the oldest then-pending FOIA requests.

E.  Beginning in 2002, ALFOI has been using software to redact documents

---

[11]  There were two 2004 vacancies, one 2005 vacancy, and two 2006 vacancies.  Because of funding limitations, DDOM had been able to fill only one of the two 2006 vacancies by the end of 2007.

[12]  The remaining 2006 vacancy will be filled by one of the two new hires in 2008.

[13]  However, it takes a minimum of two years to train an employee to know and understand the products regulated, to know where to look for responsive records, to know how to apply the exemptions applicable under the law, and to know how to implement ALFOI's administrative processes.  During the first two years a new employee is on the job, it takes approximately forty percent of a supervisor's time to train that person and perform a line-by-line review of the employee's work.

16

electronically, which is a more efficient method than redacting paper copies. In 2003, an electronic document room was created by CBER to provide an electronic archive of regulatory documents, which allows ALFOI to access documents electronically. At this point, a small percent of regulatory submissions have been submitted electronically; however, CBER anticipates that electronic submissions will increase in the coming years, which will facilitate document searches in the future. In January 2006, FDA implemented an agency-wide database to track FOIA requests, which has helped to streamline various administrative aspects of processing the requests.

28. In efforts to continue to reduce its FOIA request backlog, in November 2007, ALFOI began creating searchable electronic files of documents produced in response to FOIA requests so that, when the same information is requested in the future, searching for and producing documents will not involve hand-sifting through paper files.

<u>ACTION ON PLAINTIFF'S FOIA REQUEST</u>

29. ALFOI received plaintiff's FOIA request, reference number 07-4707, from DFOI on May 10, 2007, and placed portions of it in two queues, where it is currently pending. Items numbers 1, 2, 3 and 5 are assigned to the Complex Track, and item number 4 is assigned to the complex sub-queue of the Adverse Event Track. Because of the demands straining its document production resources, ALFOI was unable to produce the documents responsive to plaintiff's FOIA request within the statutory twenty-day deadline. However, the following steps have been taken to facilitate responding to plaintiff's request to the maximum extent practicable.

A. In a letter dated May 14, 2007, ALFOI provided a partial response to plaintiff's FOIA request. The response partially addressed item number 4 of the request, i.e., "Reports to

17

the FDA by consumers, health professionals and FDA regulated companies made to the Vaccine

Adverse Event Reporting System regarding problems with the HPV vaccine." ALFOI's partial

response included a CD-ROM that contained a summary line listing from the Vaccine Adverse

Event Reporting System (VAERS) database for all reports for HPV vaccine (Gardasil) up to the

date the search was run, i.e., May 11, 2007.

B. I have been informed that defendant's counsel contacted plaintiff's counsel on

February 6, 2008, to clarify whether plaintiff was requesting actual adverse event reports in item

number 4 of the FOIA request, in addition to the line-listing of adverse events already provided.

As of the date I have signed my declaration, I am not aware that plaintiff has responded to the

request for clarification.

C. DFOI has forwarded plaintiff's FOIA request to other offices within FDA so

that they will search for and provide responsive documents. DFOI's agency-wide database

indicates that the offices to which plaintiff's request has been forwarded, in addition to

CBER/ALFOI, are FDA's Center for Drug Evaluation and Research, the Office of Regulatory

Affairs, and various components of the Office of the Commissioner.

30. The steps described below will need to be taken before plaintiff's request can be

completed. ALFOI must coordinate with other offices in CBER, including the Office of

Vaccines Research and Review, the Office of Biostatistics and Epidemiology, CBER's Document

Control Center in the Immediate Office of the Director, and OCTMA to gather the documents

responsive to the request. In addition to gathering potentially responsive documents from various

central file locations, a reviewer will need to contact CBER personnel and direct them to search

their individual files. After the reviewer collects potentially responsive documents, (s)he will:

18

(a) conduct an initial review to determine responsiveness; (b) scan hard-copy documents into electronic files; (c) bates-stamp the documents, (d) conduct a line-by-line, word-by-word review of the responsive documents and redact, as appropriate, as well as consult with the Office of Chief Counsel, as necessary; (e) prepare a Vaughn index; and (f) conduct quality control checks on the Vaughn index to ensure its adequacy and on the responsive documents to ensure that they have been properly prepared for public disclosure. Finally, the reviewer will prepare copies of the responsive documents for delivery.

31. In light of the totality of ALFOI's above-described document disclosure obligations, the best current estimate of time needed to process plaintiff's FOIA request is at least thirty-eight months -- a minimum of thirty months for plaintiff's request to reach the front of the Complex Track, a minimum of four months to search for, collect, review for responsiveness, redact, and conduct a quality control check on the redactions, and a minimum of four months to bates-stamp, create a Vaughn Index, and a conduct quality control review on the Vaughn Index.[14] Reviewing and redacting the documents sought by plaintiff will require a significant amount of time because documents from biologics license files normally contain large amounts of complex information, much of which is protected from disclosure, such as trade secret, confidential commercial and personal privacy information, which FDA is prohibited by law from releasing.

---

[14] The time necessary for processing item number 4 of plaintiff's FOIA request, currently pending in the Adverse Event Track/complex sub-queue, is accounted for in these figures.

32.  If ALFOI were immediately to attempt to produce the documents sought by plaintiff, it would be unable to comply with its other disclosure obligations.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Joanne Binkley
Deputy Director, Office of Communication, Training and Manufacturers Assistance
Acting Director, Division of Disclosure and Oversight Management
Center for Biologics Evaluation and Research
Food and Drug Administration
Department of Health and Human Services

Executed on February 28, 2008.

20

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-01776 (EGS) |
| | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DECLARATION OF CLAUDIA J. ZUCKERMAN**

I, Claudia J. Zuckerman, declare as follows:

1. I am an associate chief counsel for enforcement in the Food and Drug Division, Office of the General Counsel, United States Department of Health and Human Services. I submit this declaration in conjunction with the government's motion for an <u>Open America</u> stay in the above-referenced case.

2. On February 6, 2008, I participated in a telephone conversation with Jason Aldrich, counsel for plaintiff.

3. During that conversation, I requested clarification regarding the scope of item number four in plaintiff's request for documents (reference number 2007-4707) under the Freedom of Information Act (FOIA). I confirmed that FDA's Center for Biologics Evaluation and Research (CBER) had already produced to plaintiff a listing of adverse events in partial response to item four and asked Mr. Aldrich to clarify whether plaintiff's request also intended to seek the actual adverse event reports in addition to the adverse event listing already provided. Mr. Aldrich stated that he needed to speak with his client and get back to me.

4. During the February 6 conversation, I also stated that, in light of the number of FOIA requests currently pending in line ahead of plaintiff's request, it was my understanding that it would take roughly thirty-six months, plus or minus two months, for CBER to finish processing plaintiff's FOIA request.

5. As of the date that I have signed my declaration, I have had no further communication with Mr. Aldrich or any other counsel for plaintiff.


Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Claudia J. Zuckerman
Associate Chief Counsel for Enforcement
Food and Drug Division
Office of the General Counsel
U.S. Department of Health and Human Services

Executed on February 27th, 2008, in Rockville, Maryland.

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01776 (EGS) |
| | ) | |
| U.S. FOOD AND DRUG ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER

UPON CONSIDERATION of Defendant's Motion for an <u>Open America</u> stay, it is this

_____day of_____2008 hereby:

ORDERED that Defendant's Motion is GRANTED; and it is further

ORDERED that the matter is stayed to April 30, 2011.

SO ORDERED.


_____
EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE